IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-221-BO

| | |
|---|---|
| BILLY MORRIS BODDIE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | O R D E R |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings. [DE 17 & 19]. A hearing on this matter was held in New Bern, North Carolina on July 24, 2013 at 11:00 a.m. For the reasons discussed below, plaintiff's motion is GRANTED, defendant's motion is DENIED, and, accordingly, the judgment of the Administrative Law Judge is REVERSED.

## BACKGROUND

Plaintiff protectively filed for disability insurance benefits under Title II of the Social Security Act on July 25, 2009. The plaintiff alleged a disability onset date of October 11, 2007 after he injured his back at work. The plaintiff's application was denied initially and on reconsideration. Subsequently, plaintiff (Mr. Boddie) had a hearing before an Administrative Law Judge (ALJ) on January 19, 2011. On February 14, 2011, ALJ Larry Miller denied the plaintiff's claim. The plaintiff sought review of the ALJ's decision by the Appeals Council, but that request was finally denied on August 22, 2012 making the ALJ's decision the final decision of the Commissioner. Mr. Boddie now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

1

## MEDICAL HISTORY

Mr. Boddie's alleged disability is severe back pain that began in his lower back and has progressed upward. Complicating Mr. Boddie's condition are the side effects, namely drowsiness, caused by the medications that he must take in order to control his pain.

Plaintiff visited the emergency room in 2007 complaining of back pain. At the emergency room he was provided Toradol, Valium, Percocet, Prednisone, Ultram, and Motrin [Tr. 833]. His pain progressed and a later x-ray and MRI revealed that he had stenosis. At that time, Mr. Boddie was treated with an epidural injection and physical therapy. [Tr. 956]. Until October 22, 2008, Mr. Boddie was receiving non-opiate pain relief treatment, including steroid injections and Neurontin. [Tr. 762]. Plaintiff visited Dr. Patel for pain management. Because the claimant had not experienced an appreciable reduction in his pain through other treatments, Dr. Patel recommended that the claimant treat his pain with opiates and the claimant began taking such medications. Oxycodone was ultimately selected as the appropriate drug.

Regarding Mr. Boddie's functional capacity, Dr. Patel opined that by the end of 2008 he was restricted to light work with no lifting over 25 pounds. [Tr. 757-58, 943-48]. In December, 2008, Mr. Boddie was evaluated at Select Physical Therapy and plaintiff was found to be able to perform medium work. [Tr. 813]. In February, 2009, the plaintiff's pain had continued and he reported his pain as a nine on a ten-point scale. At that time, Dr. Patel maintained that the claimant could only perform light work. Following additional physical therapy treatment, Dr. Patel upgraded his assessment to medium work.

Throughout this time period, the plaintiff complained that he was experiencing extreme pain when not taking oxycodone. However, when the plaintiff does take oxycodone he is incredibly drowsy and unable to stay awake. In fact, Mr. Boddie often spends the majority of his

2

day lying down due to his pain or drug-induced drowsiness. The pain and psychological impact of Mr. Boddie's condition have resulted in an assigned GAF score of 60. [Tr. 699].

By 2010, Mr. Boddie was still experiencing significant pain and feeling the severe side effects of the pain medication he was prescribed. Additionally, Mr. Boddie was suffering from depression. In an attempt to reduce the side effects experienced by Mr. Boddie, Dr. Patel altered switched the claimant's medications several times – all to no avail. Ultimately, Dr. Patel maintained Mr. Boddie on a course of Cymbalta, Oxycodone, and Topamax.

Since 2010, Mr. Boddie's symptoms have continued to worsen and he experiences extreme pain. On December 15, 2011, Dr. Aligood stated that Mr. Boddie suffers from "chronic intractable pain." [Tr. 1098]. Mr. Boddie's characterizations of his symptoms and the side effects of his medications were corroborated both by his wife and by his long-time friend, Mr. Don Pollard.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis

3

requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Here, the ALJ erred by concluding at step five that the claimant is capable of performing work other than his past relevant work

I. THE ALJ ERRED BY DISREGARDED THE TESTIMONY OF THE PLAINTIFF'S WIFE AND LONG-TIME FRIEND.

Testimony from friends and family members is valuable for assessing the functional status of social security claimants. *See Laws v. Celebrezze*, 368 F.2d 640, 644 (4th Cir. 1966). It is appropriate to remand a matter a matter where the ALJ has failed to consider the testimony of such third parties, even if the testimony of those parties merely corroborates other evidence in the record. *Burnett v. Commissioner*, 220 F.3d 112, 122 (3d Cir. 2000). On the other hand, a remand is not appropriate where third-party witnesses were offered only to support the

4

credibility of the claimant's testimony and the ALJ did find the claimant to be without credibility. *Id.*

Here, the ALJ entirely failed to consider the testimony of the claimant's wife and the claimant's long-time friend. This testimony was essential to evaluating the functional capacity of the plaintiff and should have been considered by the ALJ. It not only corroborated the claimant's testimony, but gave provided additional context for his alleged symptoms. As such, it was error for the ALJ to fail to consider this evidence in determining the plaintiff's RFC.

II. THE HYPOTHETICAL PRESENTED TO THE VOCATIONAL EXPERT WAS INCOMPLETE.

Even if it was not error for the ALJ to disregard the testimony of the claimant's wife and friend, ALJ Miller erred by failing to present a complete hypothetical to the vocational expert. "[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based on a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006)(citation omitted). Further, the ALJ cannot pick and choose what information he will present to the vocational expert in order to present a hypothetical that is favorable to his predetermined conclusion. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Here, the ALJ presented a wholly incomplete hypothetical to the vocation expert by failing to present the dramatic side effects that the plaintiff's medications have on him. Plaintiff's schedule and waking hours are almost entirely dictated by when he takes his medication. Given that plaintiff is sometimes only awake for two-hour periods it is easy to see how such a sleep cycle could affect the type and quantity of jobs available to him. Because the ALJ failed to present these limitations to the vocational expert his finding that the claimant is able to perform

5

work other than his past relevant work is not supported by substantial evidence. As such, it is appropriate to remand this matter for an award of benefits to Mr. Boddie.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for judgment on the pleadings is GRANTED, and the decision of the Commissioner is REVERSED. The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v, Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987). Accordingly, this case is REMANDED for an award of benefits.

SO ORDERED.

This  **1**  day of August, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE